**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**ROSCOE JOHNSON**                                                      **PETITIONER**

**v.**                                                      **No. 4:21CV28-SA-RP**

**WARDEN BRANDON SMITH**                                       **RESPONDENT**

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Roscoe Johnson for a writ of *habeas corpus* under 28 U.S.C. § 2254.   The State has responded to the motion, and the matter is ripe for resolution.   For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

### *Habeas Corpus* **Relief Under 28 U.S.C. § 2254**

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient.   Duker, The English Origins of the Writ of Habeas Corpus:   A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934).   It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States.   Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it.   *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section14 of the Judiciary Act of 1789.   *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

> 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*. Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915).

## Procedural Posture

Roscoe Johnson ( "Johnson" or "Petitioner") is currently in the custody of the Mississippi Department of Corrections ("MDOC") and housed at the Carroll-Montgomery County Regional Correctional Facility in Vaiden, Mississippi. On December 11, 2017, a jury convicted Johnson of sexual battery in the Circuit Court of Leflore County, Mississippi, Cause No. 2017-0020. *See* State Court Record ("SCR"), Cause No. 2018-KA-00101-COA, Vol. 1 at 71. The trial court sentenced Johnson to "fifteen (15) years to be served as ten (10) years in the custody of the [MDOC], followed by five (5) years suspended conditioned upon five (5) years Post-Release Supervision." *Id*.

Johnson appealed his conviction and sentence to the Mississippi Court of Appeals, raising the following issue, as stated by appellate counsel:

> Johnson's trial counsel provided constitutionally ineffective assistance of counsel when he failed to file a motion in limine to prevent the State from offering evidence of other abuse allegations against Johnson and failed to offer a jury instruction defining "position of trust or authority," an essential element of the offense.

SCR, Cause No. 2018-KA-00101-COA, Brief of Appellant.

- 2 -

On July 23, 2019, the Mississippi Court of Appeals affirmed Johnson's conviction and sentence. *Johnson v. State*, 288 So. 3d 361 (Miss. Ct. App. 2019), reh'g denied, Oct. 22, 2019, cert. denied, Jan. 30, 2020.[1] The court of appeals found that, while Johnson raised a claim of ineffective assistance of counsel, "[t]he record before us does not clearly show ineffective assistance of counsel, but we note that there has been no finding of fact to show otherwise." *Id*. The court of appeals held it was "bound only to the record before us" and "decline[d] to address this issue and decline[d] to address the merits of Johnson's claim without prejudice," and instructed Johnson to "apply for the Supreme Court's leave to raise his claim on ineffective assistance of counsel through post-conviction relief process. Miss. Code Ann. § 99-39-7 (Rev. 2015)." *Id*.

On August 24, 2020, Johnson, *pro se*, filed a "Motion for Leave to Proceed in the Trial Court with a Petition for Post-Conviction Relief" ("Petition for Post-Conviction Relief" or "PCR motion") in the Mississippi Supreme Court in Cause No. 2020-M-00937, raising the following issues, verbatim:

A. Petitioner Johnson's conviction and sentence should be vacated due to his actual innocence.

B. Petitioner Johnson's conviction and sentence should be vacated as the overwhelming weight of the evidence do[es] not support the verdict.

C. Petitioner Johnson's conviction and sentence should be vacated as being the product of vindictive prosecution.

D. Petitioner Johnson's conviction and sentence should be vacated as being the product of judicial misconduct.

E. Petitioner Johnson's conviction and sentence should be vacated as being the product of prosecutorial misconduct.

---

[1] Johnson filed a Petition for Writ of Certiorari with the United States Supreme Court on February 13, 2020, in Case No. 19-8294. Johnson's petition was denied on May 26, 2020. *See* Exhibit B, attached to the State's motion to dismiss.

  F. Petitioner Johnson's conviction and sentence should be vacated as being the product of ineffective assistance of trial and appellate counsel.

SCR, Cause No. 2020-M-00937, Application for Leave to File Motion for Post-Conviction

Collateral Relief at 11-46.

  The Mississippi Supreme Court denied Johnson's Petition for Post-Conviction Relief on

October 6, 2020, holding:

> Johnson's claims of ineffective assistance of counsel fail to meet the standard set out in *Strickland v. Washington*. The panel further finds that Johnson's remaining claims could have been raised at trial and in the direct appeal and are barred in post-conviction proceedings. Miss. Code Ann. § 99-39-21. Notwithstanding the procedural bar, the panel finds that those claims are without merit.

*See* Exhibit C (Denial of PCR Motion, Cause No. 2020-M-00937).[2]

  Johnson, proceeding *pro se*, filed the instant petition for a writ of *habeas corpus* on

March 1, 2021, raising substantially the same claims as those in his Petition for Post-Conviction

Relief:

| | |
|---|---|
| Ground One: | Petitioner Johnson['s] conviction and sentence should be vacated due to actual innocence. |
| Ground Two: | The overwhelming weight of the evidence do[es] not support the verdict. |
| Ground Three: | Conviction and sentence derived from vindictive prosecution. |
| Ground Four: | Conviction and sentence derived from judicial misconduct. |
| Ground Five: | Did Petitioner Johnson receive effective assistance of counsel form his court appointed attorney[?][3] |

*See* Docs. 1, 5, and 6.

---

  [2] The exhibits referenced in this memorandum opinion may be found attached to the State's response to the instant petition for a writ of habeas corpus.

  [3] Grounds One through Four are included in Johnson's petition for a writ of *habeas corpus*; however, Johnson's brief in support of his petition includes an additional ground. *See* Doc. 6 at 9-11. The court has included this claim as Ground Five.

- 4 -

**Facts**

The Mississippi Court of Appeals summarized the facts underlying Johnson's conviction

and sentence:

 ¶2.    Until December 2015, Roscoe Johnson lived with his wife, Calanth[e], and her two grandchildren, SM and CD.[4]    Calanth[e] worked for the local hospital, which meant Johnson was responsible for the children's care after school.    CD testified that, in August 2015, Johnson began to touch her inappropriately.    CD described five separate instances of abuse involving Johnson.    All five occurred in August 2015. At the time of the abuse, CD was sixteen years old.

 ¶3.    CD testified that Johnson began touching her buttocks on the outside of her clothing while she was in the kitchen of their home.    After CD told Johnson not to touch her, he stopped.    Two days after the first incident, Johnson again grabbed CD on her buttocks.    During this instance, Johnson told CD to "[not] tell [her] grandmother that [he] did it."    The abuse then progressed to Johnson touching CD in her "front area," which she later identified as her vagina.    CD was standing up in the living room when Johnson approached her and put his hands inside of her clothes and started to insert his finger into her vagina.    Johnson told CD he "wanted to make [her] feel good."    CD testified that she moved his hand and told him again not to touch her. She then went to her bedroom.

 ¶4.    About a day after the third incident, Johnson dragged CD from the living room into his bedroom when she arrived home from school.    CD tried to resist and grabbed the doorway, but Johnson pulled her inside.    CD again tried to resist Johnson's advances by falling on the floor, but Johnson continued to drag her once she fell. Johnson then closed the door to the bedroom.    CD ran to the other side of the room but could not escape.    Johnson pushed her onto the bed and took off her pants and underwear.    He then took off his own pants and underwear. Johnson assaulted CD by licking her vagina and attempting to insert his penis into her vagina and anus but was unsuccessful.    CD testified that Johnson told her again that he wanted to make her feel good and to not tell her grandmother "because it will ruin [their] marriage."    CD escaped by kicking Johnson in his penis.

 ¶5.    The final alleged incident was similar to when Johnson had previously dragged CD into his bedroom.    This time, however, CD testified that Johnson showed her a pornographic video and again tried to put his penis in her vagina and anus after performing oral sex on the minor child.    This fifth encounter ended with CD telling Johnson "[y]ou can't keep doing this to me.    You're my grandfather.    I'm suppose to look up to you.    You're suppose to take care of me, not hurt me."    After that,

---

 [4] As the Mississippi Court of Appeals noted on direct appeal, "[b]ecause both children were minors at the time of the abuse against CD, we protect their identity by use of a pseudonym." *Johnson*, 288 So. 3d at 362 n.2.

Johnson stopped abusing CD.

¶6.    The record indicates that around the time of the abuse, Johnson was drinking excessively and using crack cocaine.    Johnson testified at trial that CD had fabricated the abuse because she was angry that Johnson disciplined her for flirting with boys and for sending lewd text messages to boys her age.    He maintained that he never assaulted his step-granddaughter.

¶7.    CD admitted that she did not tell anyone about the abuse until December 2015. CD testified that she did not report it sooner because Johnson was still living in the home.    In December 2015, she felt ashamed and guilty and decided to report the abuse to her grandmother.    While Johnson was abusing CD, the only other person in the home was SM, her brother.    SM testified that when he returned home from school each day, Johnson would instruct him to go take a bath.    Although SM did not know where Johnson and CD were at first, he testified that Johnson would be "in the bedroom with [his] sister with the door closed."

¶8.    After CD disclosed what Johnson had done, her grandmother immediately reported the abuse to the Greenwood Police Department.    Edgar Gibson, an investigator with the Greenwood Police Department, testified that CD tested negative for sexually transmitted diseases.    CD's grandmother, however, testified that a physician told her that CD had an infection that could have resulted from sexual abuse.

¶9.    At the trial on December 11, 2017, Shavonne Taylor, a family protection specialist with the Mississippi Department of Human Services, testified.    When asked what her investigation revealed, she stated that "to [her] knowledge, sexual abuse was substantiated."    When she was asked if it involved CD, Taylor responded "Miss – yes, and [SM]."    Johnson's attorney immediately objected and moved for a mistrial.    The judge denied the mistrial because Johnson's attorney did not file a motion in limine to keep out mention of any other abuse allegations except those involving CD.    The trial court gave an immediate oral limiting instruction to the jury, and the jury unanimously affirmed it would disregard the testimony.    After deliberations, the jury returned a guilty verdict.    Johnson was sentenced to fifteen years in the custody of MDOC with five years suspended and ten to serve, followed by five years of post-release supervision.    Aggrieved with his conviction, Johnson now appeals and claims that his counsel was ineffective.

*Johnson*, 288 So. 3d at 362-63 (¶¶2-9).

### Grounds One, Two, Three, and Four:   Procedurally Barred

Federal courts have no jurisdiction to review a *habeas corpus* claim "if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision."

*Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir.2012). Thus, a federal court may not consider a *habeas corpus* claim when, " (1) a state court [has] declined to address [those] claims because the prisoner [has] failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas*, 565 U.S. 266, 280, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012) (alterations in original) (internal quotation marks omitted). This doctrine is known as *procedural bar*. To determine the adequacy of the state procedural bar, this court must examine whether the state's highest court "has strictly or regularly applied it." *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997) (*citing Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)). The petitioner, however, "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" – and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself." *Id*.

### Cause and Prejudice – and Fundamental Miscarriage of Justice – As Ways to Overcome Procedural Bar

A petitioner may overcome the procedural bar by showing cause for it – and actual prejudice from its application. To show cause, a petitioner must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising and discussing the claims as grounds for relief in state court. *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003). Even if a petitioner fails to establish cause for his failure and prejudice from application of the bar, he may still overcome the bar by showing that its application would result in a fundamental miscarriage of justice. To show that such a miscarriage of justice would occur, a petitioner must prove that "as a factual matter … he did not commit the crime of [his]

conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53
F.3d 106, 108 (5th Cir. 1995)). Further, he must support his allegations with new, reliable
evidence – that was not presented at trial – and must show that, "more likely than not that no
reasonable juror would have convicted him in light of the new evidence." *Fairman,* 188 F.3d at
644 (citations omitted).

On post-conviction collateral review, the Mississippi Supreme Court found that Johnson's
allegations in Grounds One, Two, Three, and Four were procedurally barred because they were
waived under Miss. Code Ann. § 99-39-21(1), which states:

> Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors
> either in fact or law which were capable of determination at trial and/or on direct
> appeal, regardless of whether such are based on the laws and the Constitution of the
> state of Mississippi or of the United States, shall constitute a waiver thereof and shall
> be procedurally barred, but the court may upon a showing of cause and actual
> prejudice grant relief from the waiver.

Miss. Code. Ann. § 99-39-21(1). Section 99-39-21(1) is an independent and adequate state
procedural bar. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997); *see also, e.g.*, *Jordan v.
Shaw*, No. 3:17CV733 DPJ-LRA, 2020 WL 3525197, at *5 (S.D. Miss. June 4, 2020), report and
recommendation adopted, No. 3:17-CV-733-DPJ-LRA, 2020 WL 3520309 (S.D. Miss. June 29,
2020) (Miss. Code Ann. § 99-39-21(1) "has long been considered by the Fifth Circuit to be an
independent and adequate state procedural bar that is regularly and consistently applied to
similar claims.")

The adequacy of the procedural bar depends on whether the State of Mississippi has
strictly or regularly applied it. *Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996). Mississippi
Courts consistently apply the Mississippi Uniform Post-Conviction Collateral Relief Act
("UPCCRA"), under which § 99-39-21(1) is codified. *See Moore v. Roberts*, 83 F.3d 699, 703
(5th Cir. 1996). The petitioner, however, "bears the burden of showing that the state did not

strictly or regularly follow a procedural bar around the time of his appeal" and must show "that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself." *Stokes*, 123 F.3d at 860. Johnson has not shown "inconsistent and irregular" application of the bar and is thus precluded under an independent and adequate state procedural rule from bringing his state claims in federal court. *Id.* at 861.

In addition, Johnson has not shown that any external impediment prevented him from bringing these claims in state court; nor has he shown that actual prejudice would result from applying the bar. In failing to establish these two elements, he has not overcome the state procedural bar, and the court may not review Grounds One, Two, Three, and Four of the instant petition.

Neither will this court's decision to forego considering the petitioner's claims result in a "fundamental miscarriage of justice," as Johnson has not shown, by clear and convincing evidence not available at trial, that "he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)). As such, his claims in Grounds One, Two, Three, and Four of the instant petition will be dismissed as procedurally barred.

**Ground Five:   Reviewed on the Merits in State Court**

The Mississippi Supreme Court has already considered Ground Five on the merits on post-conviction collateral review and decided that issue against the petitioner; hence, this claim is barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless the claim meets one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an

> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claim challenges both application of law and finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas corpus* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to Ground Five of the petitioner's claim.

Nevertheless, under § 2254(d)(2) Ground Five may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence

presented.   Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence.   *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1).   As discussed below, the petitioner has not met this burden; as such, he cannot use subsection (d)(2) to move his claim in Ground Five beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

**Ineffective Assistance of Counsel**

In Ground Five, Johnson alleges that his trial counsel provided ineffective assistance under *Strickland v. Washington*.   Doc. 6 at 9-11.   Specifically, he alleges that counsel's decision not to seek an in limine ruling constituted defective performance – which, in turn, led the trial court to deny Johnson's motion for a mistrial.   He raised this issue in his direct appeal and his PCR motion, which the Mississippi Supreme Court ultimately denied, finding that Johnson's "claims of ineffective assistance of counsel fail[ed] to meet the standard set out in *Strickland v. Washington*."   *See* Exhibit C (Denial of PCR Motion, Cause No. 2020-M-00937).

The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to his defense.   Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment.   *Strickland*, 466 U.S. at 687.   The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight.   *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988).   The petitioner "must

- 11 -

overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).

To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

Johnson argues that his trial counsel was ineffective for "[f]ailing to file a Motion in Limine to prevent the State from introducing evidence that Johnson had recently been acquitted on charges of sexually abusing (Jake Doe) prior to his trial." Doc. 6 at 10. When asked if sexual abuse allegations against Johnson *regarding C.D.* had been substantiated, the Child Protective Services investigator answered, "… yes, *and [S.M.]*" Doc. 19-10 at 127 (emphasis added). Johnson argues that this "[w]as very much prejudicial." *Id*. He raised this claim in his direct appeal, and the Mississippi Supreme Court declined to rule on it, deferring consideration until state post-conviction collateral relief (in the event Johnson chose to pursue such relief). *Johnson v. State*, 288 So.3d 361, 364 (Miss. 2019). Johnson then raised the ineffective assistance of counsel issue in his PCR motion, and the Mississippi Supreme Court found the claim to be without merit. *See* Exhibit C (Denial of PCR Motion, Cause No. 2020-M-00937).

- 12 -

Johnson's ineffective assistance of counsel claim is an unusual one, as it appears that counsel's decision forego a motion in limine did *not* amount to deficient performance – but could nonetheless have led to the denial of his motion for a mistrial when Ms. Taylor mentioned possible abuse of S.M.   Had the court *granted* counsel's motion for a mistrial, it would have changed the outcome of the proceedings – thus potentially meeting the requirement to show prejudice from counsel's decision.

First, it appears that counsel's decision to forego filing a motion in limine did *not* rise to the level of deficient performance.   The court cannot say that, in making this decision, counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment.   *Strickland*, 466 U.S. at 687.   Counsel made the strategic decision not to file such a motion, relying instead on his ability to object should the State seek to elicit such testimony. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."   *Strickland*, 466 U.S. at 690.

Upon review of the State's examination of C.P.S. Investigator Shavonne Taylor, it is clear that the State was *not* seeking to elicit such information; Taylor simply volunteered it without prompting.   Given that circumstance, the testimony could well have come out even if counsel had filed a successful motion in limine.

Further, counsel had options once the testimony regarding the charged abuse of S.M. came out.   In this instance he chose to seek a limiting instruction; though he could have chosen instead to ignore the brief mention of the charges to avoid further calling the jury's attention to the matter.   In the alternative, since Taylor had mentioned those charges counsel could have brought out testimony revealing that Johnson was *acquitted* of the charges regarding S.M.

Counsel nonetheless defended Johnson by seeking a limiting instruction regarding the

- 13 -

testimony:

| | |
|---|---|
| **Mr. Jenkins:** | Your Honor, we would submit that regardless of a motion in limine – I mean, we have no idea if a witness may testify unknowingly as to any sort of investigation.   I mean, even if the State doesn't try to [] elicit that testimony, we can't control what a witness says.   And if a witness even unintentionally injects that issue into the case, Mr. Johnson would be unfairly prejudiced and the jury could be inflamed or influenced. |
| **Court:** | The Court is willing to give a limiting instruction, and from this point forward, we can instruct this witness not to make any other references. And any other witnesses that the State intends to call, we can instruct them not to make any references to any other case other than the one that we are here about, which is [C.D.]. |

SCR, Cause No. 2018-KA-00101-COA, Vol. 3 at 2-3.

The trial court then, on counsel's request, directed the State to instruct their witnesses regarding other charges or allegations against Johnson:

| | |
|---|---|
| **Mr. Jenkins:** | Thank you, your Honor. |
| **Court:** | Okay.   Would you like a limiting instruction? |
| **Mr. Jenkins:** | Yes, your Honor, please. |
| **Court:** | Would the State instruct their witnesses, if there are any others, that there's no testimony regarding any other charges or any other allegations of abuse as far as Mr. Johnson is concerned. |

*Id*. at 3-4.

In addition, upon counsel's request, the trial court gave the jury a limiting instruction:

| | |
|---|---|
| **Court:** | Members of the jury, you heard or you may have heard testimony related to another individual, someone other than the alleged victim in this case, [C.D.].   The Court instructs the jury that said testimony is stricken from the record and you are to disregard that testimony.   Can each of you now assure this Court that you will completely disregard this testimony and not consider it during your deliberations? Can each of you now instruct – |
| **Jury:** | (Affirmative responses.) |

*Id*. at 5-6.

- 14 -

Having reviewed the record, the court finds that Johnson's trial counsel did not provide deficient performance. Though he did not file a motion in limine, he requested that the trial court address the witness and instruct the jury to disregard the inadvertent testimony. The trial court also ordered counsel for the State to admonish her witnesses not to mention any other charges against Johnson.

When counsel moved for a mistrial, the trial court intimated that, had counsel filed a motion in limine as to that issue, the court might well have ordered a mistrial:

> But if you believe that they would be unduly prejudiced by the fact that there were allegations that sexual abuse was substantiated against [S.M.] as well, then there should have been a motion in limine to limit any witnesses from referring to that.
>
> *So in light of the fact that there was no motion in limine, I'm not going to grant the mistrial.*

Doc. 19-11 at 3 (emphasis added). Hence, the decision to forego the motion in limine, though not error, could have changed the outcome of the proceedings. Investigator Taylor mentioned the substantiation of abuse as to S.M. without prompting or warning. Counsel immediately objected and took action to minimize the impact of the testimony on the jury. Certainly, he functioned as "counsel" guaranteed by the Sixth Amendment. *See Strickland, supra*. The question before the court is "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011). For the reasons set forth above, the court finds that there is a reasonable argument that counsel satisfied that standard, and the court will not, in hindsight, second-guess counsel's decision on this matter. *See Lavernia,* 845 F.2d at 498.

The Mississippi Supreme Court denied Johnson's ineffective assistance of counsel claim on the merits. As discussed above, the state appellate court's decision to reject that claim was neither contrary to, nor an unreasonable application of, federal law as set forth by the United States Supreme

- 15 -

Court; nor was the Mississippi Supreme Court's decision an unreasonable interpretation of the facts in light of the evidence presented. As such, this ground for relief is without merit and will be denied.

### An Evidentiary Hearing Is Not Necessary

Johnson seeks an evidentiary hearing on the claims in the instant petition. Doc. 6 at 13. An evidentiary hearing is not, however, necessary to decide the issues in this case. As discussed above, Johnson's first four grounds for relief are procedurally barred, and the fifth ground is without merit. The court must review a petition for writ of *habeas corpus* solely to determine whether the petitioner's constitutional rights have been preserved. *Herrera v. Collins*, 506 U.S. 390 (1993) (citations omitted); *Ellis v. Collins*, 956 F.2d 76, 78 (5th Cir. 1992). Title 28 U.S.C. § 2254(e)(2), governs whether to hold a *habeas corpus* evidentiary hearing:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on this claim unless the applicant shows that –
>
> (A) the claim relies on –
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added).

Section 2254(e)(2) thus limits evidentiary hearings for federal *habeas corpus* cases, leaving such hearings for the state courts, except in narrow circumstances. *See Hernandez v. Johnson*, 108 F.3d 554, 558 (5th Cir. 1997). Indeed, a "paper hearing" can be sufficient for a federal court to determine the facts in *habeas corpus* proceeding, *Amos v. Scott*, 61 F.3d 333 (5th Cir. 1995). The critical issue is whether credibility of witnesses would determine the outcome

of the hearing. *Amos*, *supra*. In this case, witnesses are not required; all the facts necessary to decide the issues may be found in the state court record. As such, the court need not hold an evidentiary hearing, and Johnson's request will be denied.

## Conclusion

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be denied. In addition, the petitioner's request for an evidentiary hearing will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 29th day of November, 2023.

/s/ Sharion Aycock
U. S. DISTRICT JUDGE